UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | |
|---|---|
| **SIX GUN TERRITORY, INC.,**<br>a Florida corporation,<br><br>      Plaintiff,<br><br>vs.<br><br>**SIX GUN TERRITORY LEGACY, INC.,**<br>a Florida corporation, and<br>**JIM PIERCE**, an Individual,<br><br>      Defendants. | ) <br>) <br>) <br>)  CASE NO:<br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>/ |

# **COMPLAINT**

COMES NOW the Plaintiff, SIX GUN TERRITORY, INC., by and through its undersigned attorneys, and sues the Defendants, SIX GUN TERRITORY LEGACY, INC., a Florida corporation, and JIM PIERCE for Federal Trademark Infringement; Federal Unfair Competition; Federal False Designation of Origin; Federal False Description; Federal False Representation; and Passing Off; together with supplemental claims brought under Florida law; and alleges the following:

## **JURISDICTION**

1.    This Court has jurisdiction over the subject matter of this action pursuant to U.S.C. §1338(a) which reads as follows:

> The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights, and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection, and copyright cases.

2.      This Court also has original jurisdiction of this cause pursuant to 28 U.S.C. §1331, 15 U.S.C. §§ 1116, 1117, 1121 and 1125.

3.      The matter in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) exclusive of costs, interest and attorney's fees.

4.      Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(a)(2) as the Defendants' corporate office lies in this District, the Defendants do business in this District, and the acts complained of all took place in this District.

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1366.

### THE PARTIES

6.      Plaintiff, SIX GUN TERRITORY, INC. (hereinafter referred to as "SIX GUN" or "Plaintiff"), is a Florida not-for-profit corporation organized and existing under the laws of the State of Florida, having its principal place of business at 19630 N.E. 30th Street, Williston, Levy County Florida 32926. SIX GUN was incorporated in September 2015 and has done business continuously since that time.

7.      Defendants, SIX GUN TERRITORY LEGACY, INC.. (hereinafter referred to as "LEGACY" or "Defendant"), is a Florida not-for-profit corporation, organized and existing under the laws of the State of Florida, having its principal place of business at 4645 S.E. 145th Street, Summerfield, Marion County, Florida 34491. LEGACY was recently incorporated on March 7, 2024.

8.      Defendants, JIM PIERCE (hereinafter referred to as "PIERCE" or "Defendant") is an individual, *sui juris*, residing and doing business at 4645 S.E. 145th Street, Summerfield, Marion County, Florida 34491.

9.      Defendants committed all of the acts complained of herein in the Middle District of Florida for its individual gain and profit, and is subject to the jurisdiction of this Court.

### THE ORIGINAL SIX GUN TERRITORY LIVES ON

10.     SIX GUN was organized for the purpose of commemorating and furthering the educational and entertainment legacy of the original Six Gun Territory.

11.     The original Six Gun Territory was a western-themed tourist attraction which operated in North Central Florida, near Ocala, between 1963 and 1984. The park operated rides and produced shows featuring hold-ups and shoot-outs in a mock-up of a Western town.

12.     When the original Six Gun Territory went out of business, SIX GUN purchased many of the props and accoutrements that were used at the tourist attraction. Many other items associated with the original Six Gun Territory were donated to SIX GUN. In addition, many of the original employees and volunteers, including those involved in the shoot-outs and can-can dance routines, brought their talents to SIX GUN.

13.     SIX GUN puts on an event two times a year at Kirby Farms[1] in Williston, Florida to relive and celebrate the glory days of the original Six Gun Territory. That biannual event is billed as the "Six Gun Territory Wild West Weekend and Reunion". The

---

[1] Kirby Farms is a 501(c)(3) charitable and educational organization which provides historical, recreational and agricultural programs for terminally ill children, special needs children, foster children, as well as other at-risk youth. Many of its events center on a restored antique train which operates on the property. Kirby Farms plays host to SIX GUN's "Wild West Weekend and Reunion" every year. Kirby Farms also provides SIX GUN with a website to advertise and promote its events. *See*, https://www.kirbyfarm.com/six-gun-territory-wild-west-weekend.

event recreates both the shows and the atmosphere which made the original Six Gun Territory a unique attraction.

14.     The biannual "Six Gun Territory Wild West Weekend and Reunion" is attended by thousands of people of all ages every year.

**SIX GUNS' TRADEMARK AND TRADE DRESS**

15.     Since its inception in 2015 SIX GUN has developed several unique logos and designs which together represent the trade dress by which the general public recognizes the organization and its programs.

16.     There is a unique "look and feel" to Plaintiff's website, social media, marketing, and presentation all of which comprise a recognized and valuable trade dress associated with SIX GUN and the SIX GUN trademark.

17.     SIX GUN's "principal logo" involves a stylized presentation of its name utilizing a distinctive font employing red letters of a specific hue. An example of that logo and trade dress is depicted here:



18.     This particular design and color scheme has been reproduced on signs, posters and banners used in conjunction with SIX GUN events and is widely utilized in

advertising for SIX GUN, including on its Facebook page and affiliated website.

19.    SIX GUN has also adopted a unique cartoon gunslinger which is displayed in conjunction with its name and red color scheme in advertising and social media for SIX GUN events as depicted here:



20.    The "gunslinger" logo is used in particular to identify photographs that were taken at SIX GUN events on the Kirby Farms property; the logo commonly appears at the lower right corner of those promotional images.

21.    SIX GUN also makes use of a logo which incorporates its name in red, a U.S. Marshal Star and the words "Est. 1963", harkening back to the Six Gun territory tourist attraction which opened during that year. An example of the "U.S. Marshal logo" is depicted here:



22.     SIX GUN has also adopted an "six shooter" logo which incorporates its name, in a unique "old-timey" font, often in conjunction with a Western revolver as depicted here:



That logo too has appeared widely in advertisements and social media in connection with SIX GUN.

23.     SIX GUN's use of these logos and trade dress have been exclusive to it since its formation in 2015.

24.     SIX GUN has taken steps to protect its state and common law intellectual property rights, including the use of its name "Six Gun Territory". Among those efforts has been the registration of the trademark "Six Gun Territory" with the Florida Secretary of State.

25.     On September 28, 2015, SIX GUN registered its name "Six Gun Territory" with the Florida Secretary of State under trademark number T15000001045 in connection with education and entertainment (Class 41). SIX GUN showed that this trademark had been in use since February 2015. A copy of SIX GUN's original trademark application is attached as Exhibit "A" to this Complaint.

26.     On March 25, 2024, SIX GUN updated its Florida trademark registration in the education and entertainment categories (Class 41). SIX GUN's application included exemplars of its logos including the "principal logo" described in paragraphs 17 and 18

above and the "six shooter logo" described in paragraph 22. The Florida Secretary of State registered SIG GUN's trademark as number T24000000322. A copy of SIX GUN's March 25, 2024 trademark application is attached as Exhibit "B" to this Complaint. A copy of the Florida Secretary of State trademark registration is attached as Exhibit "C" to this Complaint.

27.     The registration of the SIX GUN trademark is a matter of public record and serves as constructive notice to the public of Plaintiff and its trademark rights.

28.     SIX GUN ardently enforces all rights in connection with its trademark, trade dress, brand and good name.

29.     The SIX GUN trademark and trade dress is closely associated with Plaintiff's educational and entertainment services and Plaintiff's good will is tightly bound to that mark and dress, which is used in all of its promotions and advertising.

30.     Plaintiff has used its trademark "Six Gun Territory" in Florida since February 2015 and in interstate commerce since the same date. Plaintiff's trademark has become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Plaintiff, its high quality services and its goodwill.

31.     Plaintiff has used its logos and trade dress in Florida since February 2015 and in interstate commerce since the same date. Plaintiff's logos and trade dress has become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Plaintiff, its high quality services and its goodwill.

32.     Plaintiff continues to make use of that mark and its logos in all of its marketing and social media.

33.     SIX GUN expends significant time and effort each year advertising and

promoting its biannual "Wild West Weekend", making use of the SIX GUN trademark and logos in all associated advertisements and social media.

34.     SIX GUN enjoys considerable success and an enviable reputation in its business activities, promotions, and products and services, due in large part to its use of, and rights in Plaintiff's trademark, logos and trade dress.

35.     Plaintiff's trademark, logos and trade dress have contributed to its excellent reputation and goodwill, making Plaintiff a well-known, envied, and recognized name in its field.

36.     Plaintiff's brand identity, creativity and innovations in the design, marketing and promotion of its services have in large part contributed to its success.

37.     Since its inception in 2015, SIX GUN has worked hard to develop and preserve its identity and resultant valuable goodwill which has resulted in thousands of patrons and considerable brand recognition and brand loyalty both among the general public and within the tourist industry.

38.     SIX GUN'S services are offered to the public throughout Florida and in interstate commerce.

39.     SIX GUN is well known to the relevant consuming public as well as to its competitors, including the Defendants.

40.     As a result of Plaintiff's favorable reputation and considerable investments and promotions, Plaintiff's trademark and trade dress have become synonymous with high quality within its field.

41.     Plaintiff's SIX GUN trademark, logos and trade dress have been extensively and continuously advertised and promoted to the public through various means and modes.

By reason of such advertising and promotion, the public has come to recognize Plaintiff's products and services under Plaintiff's trademark as emanating from Plaintiff.

42.    Plaintiff's extensive advertising and marketing efforts have caused patrons and potential patrons to identify Plaintiff as the sole source of exceptional services offered under the SIX GUN trademark. As such the distinctiveness of Plaintiff's trademark and its connection to the products and services offered under Plaintiff's trademark have been established in the minds of the consuming public.

43.    No person associated with SIX GUN owns any individual rights in the SIX GUN trademark, logos or trade dress. Rather, all such rights are and have always been owned by SIX GUN as a not-for-profit corporation registered in the State of Florida.

44.    SIX GUN enforces its rights under the SIX GUN trademark, logos and trade dress in order to protect the very valuable rights and excellent reputation Plaintiff has worked so hard to achieve and to prevent public confusion between Plaintiff and Defendants, as is described hereinafter.

**PIERCE'S RELATIONSHIP WITH SIX GUN AND LEGACY**

45.    PIERCE was a re-enactor associated with the original Six Gun Territory tourist attraction.

46.    After the original attraction went out of business, PIERCE associated himself with SIX GUN where he participated in reenactments at SIX GUN's biannual "Wild West Weekend and Reunion".

47.    PIERCE also served as Vice President of SIX GUN for many years.

48.    PIERCE registered SIX GUN's social media account with Facebook (commonly referred to as a "Facebook page") and served as administrator of SIX GUN's

Facebook page. PIERCE continues to possess the log-in credentials necessary to serve as the administrator of SIX GUN's Facebook page.

49.     By virtue of his position as Vice President, PIERCE came into possession of trade secrets, proprietary information and intellectual property belonging to SIX GUN.

50.     By virtue of his position as Vice President, PIERCE also had access to personal property and equipment owned by SIX GUN.

51.     Eventually, PIERCE became disaffected with SIX GUN and announced his intention to step down as an officer. As a result, PIERCE was removed as Vice President on March 19, 2024, a fact which was formalized through an amended annual report filed with the Florida Secretary of State on March 20, 2024.

<u>**LEGACY'S FRAUDULENT INCEPTION AND PURPOSE**</u>

52.     On March 7, 2024, PIERCE caused the filing of Articles of Incorporation for LEGACY. Those Articles state that Pierce is the incorporator, registered agent and president of LEGACY.

53.     The principal address of LEGACY is also PIERCE's personal residence.

54.     PIERCE controls the day-to-day operations of LEGACY.

55.     PIERCE incorporated LEGACY for the specific purpose of competing with SIX GUN.

56.     PIERCE incorporated LEGACY in order to trade directly off the name and trademark of SIX GUN, to sow confusion among Plaintiff's patrons, sponsors, donors, vendors and suppliers and to steal Plaintiff's very name. In short, the name and business of LEGACY is no accident; it was organized for the purpose of stealing Plaintiff's trade name and business. *Compare*, <u>Earth, Wind & Fire IP, LLC v. Substantial Music Group LLC</u>, 23-

20884-CIV, 2024 WL 1025265 (S.D. Fla. Mar. 4, 2024) (Former guitarist for the well known group, Earth Wind and Fire, joined a new band called "Earth Wind & Fire Legacy Reunion" making use of the name as well as the original group's distinctive "Phoenix" logo).

G.      The very purpose of LEGACY is to further a larger campaign to sow confusion among Plaintiff's patrons, sponsors, donors and vendors, to infringe upon, dilute and disparage the SIX GUN trademark and to literally steal Plaintiff's business.

57.     According to the Articles of Incorporation for LEGACY, the purpose of that corporation is:

> TO CARRY ON THE LEGACY AND SPIRIT OF THE ORIGINAL FLORIDA SIX GUN TERRITORY THEME PARK BY ENTERTAINING AND EDUCATING THE PUBLIC WITH OLD WEST STYLE ENTERTAINMENT.

58.     LEGACY's statement of corporate purpose is all-but-indistinguishable from the purpose for which SIX GUN was formed as reflected in Plaintiff's Articles of Incorporation:

> TO PRESERVE THE SPIRIT OF THE ORIGINAL SIX GUN TERRITORY OF SILVER SPRINGS, FL, INCLUDING BUT NOT LIMITED TO DISPLAY OF MEMORABILIA, HISTORIC REENACTMENTS OF GUNFIGHTS, ETC.

59.     Upon his removal as Vice President of SIX GUN, PIERCE had a legal and fiduciary duty to surrender possession of any personal property belonging to SIX GUN, including all log-in and access credentials for social media sites, and to cease the use of any trademarks, logos and trade dress of SIX GUN.

60.     Instead of honoring his legal and fiduciary duties to SIX GUN, PIERCE directly transferred or made available to LEGACY all of the trade secrets, proprietary

information and intellectual property which he had improperly acquired from SIX GUN despite actual knowledge that this intellectual property belonged to SIX GUN.

61.     Instead of honoring his legal and fiduciary duties to SIX GUN, PIERCE misappropriated and transferred administrative control over SIX GUN's Facebook page to LEGACY despite actual knowledge that this intellectual property belonged to SIX GUN. Those actions deprived SIX GUN of access to its social media account and the content and intellectual property associated with Plaintiff's Facebook page. LEGACY thereupon coopted Plaintiff's Facebook page for its own purposes and currently uses that website and its content to market and promote LEGACY.

62.     Instead of honoring his legal and fiduciary duties to SIX GUN, PIERCE misappropriated and transferred certain items of personal property belonging to SIX GUN to LEGACY despite actual knowledge that this personal property belonged to SIX GUN.

63.     Instead of honoring his legal and fiduciary duties to SIX GUN, PIERCE contacted patrons, sponsors, donors, vendors, suppliers, advertisers and merchants who had previously done business with SIX GUNS, and which were made known to PIERCE only because of his position as Vice President of SIX GUNS, and falsely told those third parties that LEGACY had taken over the Plaintiff's business and that he was now in control of all operations.

64.     On April 9, 2024, PIERCE filed a "Statement of Facts" with the Florida Secretary of State in which he falsely claimed, *inter alia*, to have the personal right to utilize SIX GUN's trademark:

> Six Gun Territory, Inc. also owns a Service Mark (filed 9/28/2015) for the name Six Gun Territory. On March 20, 2024, Daryl Kirby registered a new Service Mark (T24000000322, eff. 3/25/24) Because this amendment was made without his consent, Jim Pierce retains the right to use this Service

Mark and to act on behalf of Six Gun Territory, lnc. for its original purpose of entertainment and education.

A copy of the April 9, 2024 "Statement of Facts" is attached as Exhibit "D" to this Complaint.

65.     The Statement of Fact is false and misleading. Plaintiff alleges the following statement of particulars:

A.      PIERCE never had any individual ownership interest in any mark used or registered by SIX GUN. Rather, all such marks were at all times owned and utilized exclusively by SIX GUN as a Florida not-for-profit corporation.

B.      SIX GUN has never licensed, authorized or permitted PIERCE to make any use of its mark, logos or trade dress for his individual purposes or for the use or benefit of LEGACY.

C.      PIERCE has never had and does not retain any interest in SIX GUN's mark, logos or trade dress.

D.      The mark registered by Daryl Kirby was registered in the name of, for the benefit of, and at the direction of SIX GUN.

E.      PIERCE has no right to act on behalf of SIX GUN. PIERCE was removed as Vice President of SIX GUN on March 20, 2024 and was not thereafter an agent, actual or apparent, for SIX GUN.

66.     The incorporation of an entity with a name nearly identical to Plaintiff's, the statement of its corporate purpose, the timing of LEGACY's formation, and the marketing of identical services for an identical purpose all show that LEGACY was organized for a fraudulent purpose; to-wit: to confuse Plaintiff's patrons, sponsors, donors and vendors, to infringe upon and dilute Plaintiff's trademark and to steal Plaintiff's

business.

## ILLEGAL ACTS OF THE DEFENDANTS

67.     At all times material to the issues presented herein, Defendants had actual, prior knowledge of Plaintiff's business, its SIX GUN trademark, its logos and trade dress and its business success.

68.     LEGACY is in direct competition with SIX GUN; they both engage in western-themed reenactments marketed to a similar demographic utilizing the same trade name and trade dress.

69.     LEGACY does business under the name "Six Gun Territory Legacy". Defendants' very name was intentionally adopted to infringe upon Plaintiff's SIX GUN trademark, trade dress and name, to dilute Plaintiff's valuable intellectual property rights and to sow confusion among Plaintiff's patrons, sponsors, donors and vendors.

70.     Defendants have directly copied SIX GUN's trademark, logos and trade dress and have directly infringed upon SIX GUN's trademark as more specifically described below.

71.     LEGACY has directly copied SIX GUN's trademarked name and "principal logo" and has utilized that logo extensively in its on-line promotions and on LEGACY's Facebook page. The only difference between the two logos is the inclusion of the word "Legacy" as depicted here:[2]

---

[2]     Accessible    on-line    at    https://www.facebook.com/61556885610799/photos/
122134623452229520/?_rdr (last accessed 4/26/24).



72.     LEGACY has intentionally coopted SIX GUN's "principal logo" as its own primary logo; the trademarked words "Six Gun Territory" appear repeatedly in LEGACY posts and promotions which also include the distinctive font and color scheme as depicted here.[3]



73.     LEGACY has also made use of SIX GUN's trademarked name and "principal logo" for the specific purpose of profiting from that name through the

---

[3] Accessible on-line at https://www.facebook.com/photo.php?fbid=122116908494229520&set=pb.61556885610799.-2207520000&type=3 (last accessed 4/26/24).

commercial sale of merchandise bearing the "Six Gun Territory" name, as depicted here.[4]



74.    LEGACY has directly copied SIX GUN's trademarked name and "gunslinger logo" and has utilized that logo extensively in its on-line promotions and on LEGACY's Facebook page. The only difference between the two logos is the inclusion of the word "Legacy" as a superimposed stamp as depicted here:[5]



---

[4]    Accessible   on-line   at   https://www.facebook.com/61556885610799/photos/122135296580229520/?rdr (last accessed 4/25/24).

[5] Multiple examples of this gunslinger logo can be found on the LEGACY Facebook page. *See*, https://www.facebook.com/groups/906672416095049/ (last accessed 4/25/24).

75.     LEGACY has directly copied SIX GUN's trademarked name and "U.S. Marshal logo" and has utilized that logo extensively in its on-line promotions and on LEGACY's Facebook page. Again, the only difference is the inclusion of the word "Legacy". Two such uses are depicted here:[6]





---

[6] Both accessible at https://www.facebook.com/photo.php?fbid=122124446510229520 &set=pb.61556885610799.-2207520000&type=3 (last accessed 4/25/24).

76.     LEGACY has also utilized SIX GUN's trademark and "Marshal logo" in the form of a sign on a trailer - billed as its "Mobile Command Unit" - which is used to advertise and promote its services.[7]



77.     LEGACY has also made use of SIX GUN's trademarked name and "U.S. Marshall Logo" for the specific purpose of profiting from that name through the commercial sale of merchandise bearing the "Six Gun Territory" name. That merchandise includes hats and patches with the "U.S. Marshall logo" as depicted here.[8]

---

[7] https://www.facebook.com/reel/1124880592063054.

[8]   Hats   accessible   on-line   at   https://www.facebook.com/photo.php?fbid= 122135296610229520&set=pb.61556885610799.-2207520000&type=3;   Patches   found on-line   at   https://www.facebook.com/photo.php?fbid=122126948762229520&set= pb.61556885610799.-2207520000&type=3 (last accessed 4/25/24).





78.     LEGACY has also coopted SIX GUN's trademarked name and the font and style reflected on Plaintiff's "six shooter" logo. In particular, LEGACY's promotional materials directly copy the unique "old-timey" font which SIX GUN employed in its "six shooter" logo with the only distinction being that the word "Six" is replaced with the number "6". One such use is depicted here:[9]

---

[9] Facebook page at https://www.facebook.com/photo.php?fbid=122133300806229520 &set=pb.61556885610799.-2207520000&type=3 (last accessed 4/25/24).



79.   LEGACY makes use of images associated exclusively with SIX GUNS in promotions which are intended to confuse patrons, sponsors, donors, vendors and suppliers into believing that LEGACY is the successor of SIX GUNS or that it is associated in some way with Plaintiffs. In particular, LEGACY has posted numerous photographs on its Facebook page which were taken at SIX GUN events at Kirby Farms in past years. LEGACY has passed those photographs off as examples of its own events. Some of those images even include signage showing that the events were originally conducted by SIX GUN at Kirby Farms as depicted here:[10]



---

[10]   Retrieved from the LEGACY Facebook page https://www.facebook.com/ sixgunterritorylegacy/photos (last accessed 4/26/24).

and here: [11]



80.    LEGACY has also converted some of SIX GUN's personal property to its own use for the purposes of advertising. In particular, SIX GUN owned and made use of a physical banner which displayed its name and was often used for promotional purposes. That same image appears in LEGACY's promotional advertising. It is believed that the original physical banner was cropped or cut down by LEGACY to remove the original text referencing the Kirby Family Farm and that the banner is now appearing in LEGACY advertisements. [12] A side-by-side image of the original SIX GUN banner (top) and the banner now used by LEGACY (bottom) are depicted here:

---

[11] Id.

[12] Screen grab from video on LEGACY Facebook page accessible on-line at https://www.facebook.com/reel/1064997561225277 (last accessed 4/25/24).





81.     The Defendants are operating a competing business which is intentionally, consciously and systematically seeking to utilize Plaintiff's SIX GUN trademark, logos and trade dress in order to exploit the goodwill and substantial advertising expenditures of Plaintiff.

82.     The fact that Defendants were able to register a deceptively similar name ("Six Gun Territory Legacy, Inc.") with the Florida Secretary of State does not serve as a defense and does not immunize Defendants from Plaintiff's claims. The Florida Secretary of State (through Sunbiz.org) acts merely as a registration service which does not evaluate filings for trademark or copyright infringements.

83.     Defendants uses their deceptively similar name as a conduit to direct

business and inquiries to themselves.

84.     Since its inception, Defendants have, with complete disregard for Plaintiff's rights, been, openly, regularly and actively engaged in the illegal, unauthorized, infringing, unlicensed, and imitative use of the same or confusingly similar trade name, logos and trade dress as that owned by Plaintiff, (hereinafter the "Infringing Mark"), by various and numerous means and modes, for the same and similar products and services, all offered to the public in the same or similar areas as Plaintiff, in direct competition with Plaintiff.

85.     Unless enjoined by this Court, Defendants will continue to expand the use of the Infringing Mark and will cause further irreparable damage and harm to Plaintiff.

86.     The regular offering to the public of products and services by Defendants under the Infringing Mark is, and has been, without permission or authority of Plaintiff and without any legitimate license to the Infringing Mark.

87.     The Infringing Mark has been used by Defendants and offered to the public utilizing this District as a forum for their infringing activities with knowledge of the source of the Infringing Mark and with knowledge of the fact that the Infringing Mark is neither genuine nor authorized by Plaintiff.

88.     By using the Infringing Mark and engaging in activities and offering products for sale from the Infringing Mark, Defendants have misrepresented and falsely described to the general public the origin and source of Defendants' products so as to deceive the public and deliberately create the likelihood of confusion, or cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' products and services by the ultimate purchaser as to both the source and sponsorship of Defendants' products and

services.

89.     Defendants' products and services are of inferior quality compared to those authorized to be sold by Plaintiff, and the promotion and sale thereof has, does, and will continue to damage and dilute the goodwill Plaintiff has developed in connection with offering legitimate, authorized products and services.

90.     Defendants, with full knowledge of the notoriety of Plaintiff's trademark, intended to, and did, trade on the goodwill associated with Plaintiff's trademark, have committed acts of unfair competition, have engaged in deceptive and unfair business practices, have been unjustly enriched, and have misled and will continue to confuse and mislead the public into assuming a connection between Plaintiff and Defendants by Defendants' offering to the public of its products and services under the Infringing Mark.

91.     Defendants' copying of Plaintiff's trademark, logo and trade dress is calculated to deceive potential purchasers of Plaintiff's merchandise and services and has mislead many of those patrons to purchase items from Defendants or to attend Defendants' events believing that they were associated with the Plaintiff.

92.     Defendants have offered for sale and sold in Florida and elsewhere, products and services under the Infringing Mark, which are confusingly similar to Plaintiff's, thus creating a likelihood of confusion, deception, and mistake as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' products.

93.     The use by Defendants of the Infringing Mark constitutes a knowing and willful use of a false designation of origin and a false description or representation that wrongly and falsely designates Defendants' products and services offered to the public by

Defendants as originating from, or connected with, Plaintiff, and constitutes utilizing false descriptions or representations in commerce.

94.    The imitation, reproduction, and unauthorized use of the Infringing Mark causes irreparable injury to Plaintiff, including injury to its business reputation and dilution of the distinctive quality of Plaintiff's trademark.

95.    Defendants' use of the Infringing Mark has, does, and is likely to permit Defendants to pass off its products and services as those of Plaintiff's, all to the detriment of Plaintiff and to the unjust enrichment of Defendants.

96.    Defendants' use of the Infringing Mark has caused actual confusion in the marketplace and does cause, and is likely to continue to cause, damage to Plaintiff by tarnishing the valuable reputation and image associated with Plaintiff and its products and services.

97.    The actual confusion referred to above has resulted in numerous inquiries as to whether Plaintiff and Defendants are affiliated and/or whether Defendants are sponsored by or acting in a joint venture with Plaintiff. Those instances of confusion, public inconvenience and mistake are continuing in nature.

98.    The actual confusion referred to above has resulted in the diversion of patrons, sponsors, donors and vendors to Defendants. Those instances of confusion, public inconvenience and mistake are continuing in nature.

99.    Defendants are utilizing the Infringing Mark to promote events and the sale of merchandise at events which mimic those produced by Plaintiff. One such event, billed as "Frontier Day at Sky Ranch" is scheduled for April 27, 2024. That event is actively

promoted on LEGACY's Facebook page as of the filing of this Complaint.[13]

100.    Unless enjoined and restrained by this Court, Defendants will continue to further pass off their products and services as those of Plaintiff by their many and continuing acts of misrepresentation to the consuming public, members of which are likely to, and do, believe that Defendants' products and services emanate from or are associated with Plaintiff.

## INJURY TO PLAINTIFF AND THE PUBLIC

101.    Defendants' unlawful activities result in irreparable harm and injury to Plaintiff. Plaintiff alleges the following particulars:

A.    Defendants' unlawful activities are likely to continue to cause confusion, mistake, and deception as to the source or origin of Defendants and their activities, and is likely to falsely suggest a sponsorship, connection, license, or association between Defendants and/or their products and services with Plaintiff;

B.    Defendants' unlawful activities deprive Plaintiff of its absolute right to determine the manner in which its products and services are presented to the general public;

C.    Defendants' unlawful activities deceive the public as to the origin and sponsorship of such products and services;

D.    Defendants' unlawful activities wrongfully trade upon and cash in on Plaintiff's reputation and exclusive rights in its trademark and intellectual property.

E.    To the extent Defendants' products and services are or may be of inferior

---

[13] *See*, Sky Ranch post at https://m.facebook.com/story.php?story_fbid= pfbid026fXDrSoAyorHtij9ViwvCwTPKAKyF3Mzvt18TFUvhwDBLdftTxW14kpfgH8s zy7jl&id=61556885610799 (last accessed 4/25/24).

quality, the sale and marketing of those products irreparably harms and injures Plaintiff's reputation.

102.    Plaintiff is entitled to an injunction restraining Defendants, their officers, alter egos, agents, servants, employees, attorneys, and all persons acting in concert with them, from engaging in any further acts in violation of Plaintiff's rights.

103.    Plaintiff is further entitled to recover from Defendants the damages, interest, and attorneys' fees and costs it has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of Defendants' acts as alleged herein. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by Plaintiff.

104.    Plaintiff has retained BENJAMIN, AARONSON, EDINGER & PATANZO, P.A. as attorneys to represent it in this action and has agreed to pay them a reasonable fee, which fee Defendants must pay pursuant to 15 U.S.C. §1117(a) as the circumstances of this case are exceptional.

105.    Plaintiff is also entitled to recover attorney's fees under Florida law, pursuant to §495.141, Fla.Stat.

## COUNT I
## Federal Trademark Infringement
### (15 U.S.C. §1125)

106.    Plaintiff repeats and realleges Paragraphs 1 through 4 and 6 through 104 above as if fully set forth herein.

107.    Defendants' acts, as alleged herein with respect to Defendants' infringement of Plaintiff's trademark, are likely to cause public confusion, mistake, or deception and constitute trademark infringement in violation of 15 U.S.C. §1125.

108.    Actual customer confusion is shown by the fact that Defendants have redirected Plaintiff's patrons from the SIX GUN Facebook page to the Facebook page established by LEGACY and by the fact that vendors, sponsors and donors who have previously done business with SIX GUN have been led to believe that Plaintiff is associated with LEGACY's events.

109.    Defendants' acts, as alleged herein, have caused irreparable injury and damage to Plaintiff and, unless restrained, will continue to do so.

110.    As a result of Defendants' infringing activities, Plaintiff has suffered damages with interest.

111.    Plaintiff has no adequate complete remedy at law.

WHEREFORE, Plaintiff demands judgment against Defendants including:

A.    A preliminary and permanent injunction enjoining and restraining Defendants and their officers, directors, principals, alter egos, agents, servants, employees, successors, assigns, attorneys, and all those persons in active concert or participation therewith who received actual notice of this Court's orders:

(1)    From making use of the trademarked name "SIX GUN TERRITORY" in conjunction with any educational or entertainment service;

(2)    From making use of the SIX GUN logos described in this Complaint; to-wit: the "principal logo", the "gunslinger logo", the "U.S. Marshall logo" and the "six shooter logo";

(3)    From causing likelihood of confusion, or causing mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff or Plaintiff's trademark, or as to the origin, sponsorship, or approval of its products and

services, or commercial reputation, or dilution of the distinctiveness of, Plaintiff's trademark or Plaintiff's forms of advertising;

(4)     From directly or indirectly falsely designating or representing that any products or services are authorized, approved, associated with, or originating from Plaintiff;

(5)      From directly or indirectly using the Infringing Mark or any confusingly similar variant, which is likely to cause confusion or further irreparable harm to Plaintiff's business, reputation or goodwill;

(6)     From utilizing the Infringing Mark or any confusingly similar variant in any shape or manner;

(7)     From publishing, assembling, marketing, distributing, or otherwise utilizing any literature, business forms, printed matter, signs, or any other representations, regardless of the medium, which bear the Infringing Mark or any confusingly similar variant, and from otherwise unfairly competing in any way with Plaintiff;

(8)     To deliver up to Plaintiff all literature. printed matter, products, and any other representations, regardless of form, which are in, or come to be in, Defendants' respective possession, custody, or control and which bear the Infringing Mark or any confusingly similar variant;

(9)     To notify its direct customers, sponsors, donors, vendors, agents, and representatives that the Infringing Mark or any confusingly similar variant is not connected with Plaintiff;

(10)    To immediately institute full compliance with any order entered by this Court and, within thirty days following the date of entry of any preliminary or

permanent injunctive relief issued by this Court, propound and file a statement under oath and penalty of perjury, that each and every injunctive provision has been fully and completely complied with.

(11)    To immediately relinquish control over Plaintiff's Facebook page and to take every action to place Plaintiff's authorized representative in administrative control over that social media account.

B.    An accounting and payment of all profits gained by the Defendants while engaging in the acts complained of herein, said payment to be trebled for the willful infringement by Defendants;

C.    All monetary damages suffered by Plaintiff, said damages to be trebled for the willful infringement by Defendants;

D.    an award of attorneys' fees and costs pursuant to 15 U.S.C. §1117; and

E.    such other interlocutory and permanent relief as may be just and proper.

**COUNT II**

**Federal Unfair Competition**

**(15 U.S.C. §1125)**

112.    Plaintiff repeats and realleges Paragraphs 1 through 4 and 6 through 104 above as if fully set forth herein.

113.    Defendants' acts, as alleged herein with respect to Defendants' infringement of Plaintiff's trademark, are likely to cause public confusion, mistake, or deception, and constitute unfair competition with Plaintiff in violation of 15 U.S.C. §1125.

114.    Defendants' acts, as alleged herein, have caused irreparable injury and damage to Plaintiff and, unless restrained, will continue to do so.

115.    As a result of Defendants' infringing activities, Plaintiff has suffered

damages with interest.

116.    Plaintiff has no adequate complete remedy at law.

WHEREFORE, Plaintiff demands judgment against Defendants including:

A.    A preliminary and permanent injunction enjoining and restraining Defendants and its officers, directors, principals, alter egos, agents, servants, employees, successors, assigns, attorneys, and all those persons in active concert or participation therewith who received actual notice of this Court's orders:

(1)    From making use of the trademarked name "SIX GUN TERRITORY" in conjunction with any educational or entertainment service;

(2)    From making use of the SIX GUN logos described in this Complaint; to-wit: the "principal logo", the "gunslinger logo", the "U.S. Marshall logo" and the "six shooter logo";

(3)    From causing likelihood of confusion, or causing mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff or Plaintiff's trademark, or as to the origin, sponsorship, or approval of its products and services, or commercial reputation, or dilution of the distinctiveness of Plaintiff's trademark or Plaintiff's forms of advertising;

(4)    From directly or indirectly falsely designating or representing that any products or services are authorized, approved, associated with, or originating from Plaintiff;

(5)    From directly or indirectly using the Infringing Mark or any confusingly similar variant, which is likely to cause confusion or further irreparable harm to Plaintiff's business, reputation or goodwill;

(6)     From utilizing the Infringing Mark or any confusingly similar variant in any shape or manner;

(7)     From publishing, assembling, marketing, distributing, or otherwise utilizing any literature, business forms, printed matter, signs, or any other representations, regardless of the medium, which bear the Infringing Mark or any confusingly similar variant, and from otherwise unfairly competing in any way with Plaintiff;

(8)     To deliver up to Plaintiff all literature, printed matter, products, and any other representations, regardless of form, which are in, or come to be in, Defendants' respective possession, custody, or control and which bear the Infringing Mark or any confusingly similar variant;

(9)     To notify its direct customers, agents, and representatives that the Infringing Mark or any confusingly similar variant is not connected with Plaintiff;

(10)    To immediately institute full compliance with any order entered by this Court and, within thirty days following the date of entry of any preliminary or permanent injunctive relief issued by this Court, propound and file a statement, under oath and penalty of perjury, that each and every injunctive provision has been fully and completely complied with.

(11)    To immediately relinquish control over Plaintiff's Facebook page and to take every action to place Plaintiff's authorized representative in administrative control over that social media account.

B.     An accounting and payment of all profits gained by the Defendants while engaging in the acts complained of herein, said payment to be trebled for the willful infringement by Defendants;

C.      All monetary damages suffered by Plaintiff, said damages to be trebled for the willful infringement by Defendants;

D.      An award of attorneys' fees and costs pursuant to 15 U.S. C. §1117; and

E.      Such other interlocutory and permanent relief as may be just and proper.

**COUNT III**
**Federal False Designation of Origin**
**(15 U.S.C. §1125)**

117.    Plaintiff repeats and realleges Paragraphs 1 through 4 and 6 through 104 above as if fully set forth herein.

118.    Defendants' acts, as alleged herein with respect to Defendants' Infringement of Plaintiff's trademark are likely to cause public confusion, mistake, or deception, and constitute federal false designation of origin in violation of 15 U.S.C. §1125 and related subsections.

119.    Defendants' acts, as alleged herein, have caused irreparable injury and damage to Plaintiff, and unless restrained, will continue to do so.

120.    As a result of Defendants' infringing activities, Plaintiff has suffered damages with interest.

121.    Plaintiff has no adequate complete remedy at law.

WHEREFORE, Plaintiff demands judgment against Defendants including:

A.      A preliminary and permanent injunction enjoining and restraining Defendants and their officers, directors, principals, alter egos, agents, servants, employees, successors, assigns, attorneys, and all those persons in active concert or participation therewith who received actual notice of this Court's orders:

(1)    From making use of the trademarked name "SIX GUN TERRITORY" in conjunction with any educational or entertainment service;

(2)    From making use of the SIX GUN logos described in this Complaint; to-wit: the "principal logo", the "gunslinger logo", the "U.S. Marshall logo" and the "six shooter logo";

(3)    From causing likelihood of confusion, or causing mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff or Plaintiff's trademark, or as to the origin, sponsorship, or approval of its products and services, or commercial reputation, or dilution of the distinctiveness of, Plaintiff's trademark or Plaintiff's forms of advertising;

(4)    From directly or indirectly falsely designating or representing that any products or services are authorized, approved, associated with, or originating from Plaintiff;

(5)    From directly or indirectly using the Infringing Mark or any confusingly similar variant, which is likely to cause confusion or further irreparable harm to Plaintiff's business, reputation or goodwill;

(6)    From utilizing the Infringing Mark or any confusingly similar variant in any shape or manner;

(7)    From publishing, assembling, marketing, distributing, or otherwise utilizing any literature, business forms, printed matter, signs, or any other representations, regardless of the medium, which bear the Infringing Mark or any confusingly similar variant, and from otherwise unfairly competing in any way with Plaintiff;

(8)    To deliver up to Plaintiff all literature. printed matter, products, and

any other representations, regardless of form, which are in, or come to be in, Defendants' respective possession, custody, or control and which bear the Infringing Mark or any confusingly similar variant;

(9)    To notify its direct customers, sponsors, donors, vendors, agents, and representatives that the Infringing Mark or any confusingly similar variant is not connected with Plaintiff.

(10)    To immediately institute full compliance with any order entered by this Court and, within thirty days following the date of entry of any preliminary or permanent injunctive relief issued by this Court, propound and file a statement under oath and penalty of perjury, that each and every injunctive provision has been fully and completely complied with.

(11)    To immediately relinquish control over Plaintiff's Facebook page and to take every action to place Plaintiff's authorized representative in administrative control over that social media account.

B.    An accounting and payment of all profits gained by the Defendants while engaging in the acts complained of herein, said payment to be trebled for the willful infringement by Defendants;

C.    All monetary damages suffered by Plaintiff, said damages to be trebled for the willful infringement by Defendants;

D.    An award of attorneys' fees and costs pursuant to 15 U.S.C. §1117; and

E.    Such other interlocutory and permanent relief as may be just and proper.

## COUNT IV

## Federal False Description

### (15 U.S.C. §1125)

122.     Plaintiff repeats and realleges Paragraphs 1 through 4 and 6 through 104 above as if fully set forth herein.

123.     Defendants' acts, as alleged herein with respect to Defendants' infringement of Plaintiff's trademark are likely to cause public confusion, mistake, or deception, and constitute Federal false description in violation of 15 U.S.C. §1125 and related subsections.

124.     Defendants' acts, as alleged herein, have caused irreparable injury and damage to Plaintiff and, unless restrained, will continue to do so.

125.     As a result of Defendants' infringing activities, Plaintiff has suffered damages with interest.

126.     Plaintiff has no adequate complete remedy at law.

WHEREFORE, Plaintiff demands judgment against Defendants including:

A.     A preliminary and permanent injunction enjoining and restraining Defendants and their officers, directors, principals, alter egos, agents, servants, employees, successors, assigns, attorneys, and all those persons in active concert or participation therewith who received actual notice of this Court's orders:

(1)     From making use of the trademarked name "SIX GUN TERRITORY" in conjunction with any educational or entertainment service;

(2)     From making use of the SIX GUN logos described in this Complaint; to-wit: the "principal logo", the "gunslinger logo", the "U.S. Marshall logo" and the "six shooter logo";

(3)    From causing likelihood of confusion, or causing mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff or Plaintiff's trademark, or as to the origin, sponsorship, or approval of its products and services, or commercial reputation, or dilution of the distinctiveness of, Plaintiff's trademark or Plaintiff's forms of advertising;

(4)    From directly or indirectly falsely designating or representing that any products or services are authorized, approved, associated with, or originating from Plaintiff;

(5)    From directly or indirectly using the Infringing Mark or any confusingly similar variant, which is likely to cause confusion or further irreparable harm to Plaintiff's business, reputation or goodwill;

(6)    From utilizing the Infringing Mark or any confusingly similar variant in any shape or manner;

(7)    From publishing, assembling, marketing, distributing, or otherwise utilizing any literature, business forms, printed matter, signs, or any other representations, regardless of the medium, which bear the Infringing Mark or any confusingly similar variant, and from otherwise unfairly competing in any way with Plaintiff;

(8)    To deliver up to Plaintiff all literature. printed matter, products, and any other representations, regardless of form, which are in, or come to be in, Defendants' respective possession, custody, or control and which bear the Infringing Mark or any confusingly similar variant;

(9)    To notify its direct customers, sponsors, donors, vendors, agents, and representatives that the Infringing Mark or any confusingly similar variant is not

connected with Plaintiff.

(10)    To immediately institute full compliance with any order entered by this Court and, within thirty days following the date of entry of any preliminary or permanent injunctive relief issued by this Court, propound and file a statement under oath and penalty of perjury, that each and every injunctive provision has been fully and completely complied with.

(11)    To immediately relinquish control over Plaintiff's Facebook page and to take every action to place Plaintiff's authorized representative in administrative control over that social media account.

B.    An accounting and payment of all profits gained by the Defendants while engaging in the acts complained of herein, said payment to be trebled for the willful infringement by Defendants;

C.    All monetary damages suffered by Plaintiff, said damages to be trebled for the willful infringement by Defendants;

D.    An award of attorneys' fees and costs pursuant to 15 U.S.C. § 1117; and

E.    Such other interlocutory and permanent relief as may be just and proper.

## COUNT V
## Federal False Representation
### (15 U.S.C. §1125)

127.    Plaintiff repeats and realleges Paragraphs 1 through 4 and 6 through 104 above as if fully set forth herein.

128.    Defendants' acts, as alleged herein with respect to Defendants' infringement of Plaintiff's trademark are likely to cause public confusion, mistake, or deception, and constitute federal false representation in violation of 15 U.S.C. §1125 and

related subsections.

129.    Defendants' acts, as alleged herein, have caused irreparable injury and damage to Plaintiff and, unless restrained, will continue to do so.

130.    As a result of Defendants' infringing activities, Plaintiff has suffered damages with interest.

131.    Plaintiff has no adequate complete remedy at law.

WHEREFORE, Plaintiff demands judgment against Defendants including:

A.    A preliminary and permanent injunction enjoining and restraining Defendants and their officers, directors, principals, alter egos, agents, servants, employees, successors, assigns, attorneys, and all those persons in active concert or participation therewith who received actual notice of this Court's orders:

(1)    From making use of the trademarked name "SIX GUN TERRITORY" in conjunction with any educational or entertainment service;

(2)    From making use of the SIX GUN logos described in this Complaint; to-wit: the "principal logo", the "gunslinger logo", the "U.S. Marshall logo" and the "six shooter logo";

(3)    From causing likelihood of confusion, or causing mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff or Plaintiff's trademark, or as to the origin, sponsorship, or approval of its products and services, or commercial reputation, or dilution of the distinctiveness of, Plaintiff's trademark or Plaintiff's forms of advertising;

(4)    From directly or indirectly falsely designating or representing that any products or services are authorized, approved, associated with, or originating from

Plaintiff;

(5)     From directly or indirectly using the Infringing Mark or any confusingly similar variant, which is likely to cause confusion or further irreparable harm to Plaintiff's business, reputation or goodwill;

(6)     From utilizing the Infringing Mark or any confusingly similar variant in any shape or manner;

(7)     From publishing, assembling, marketing, distributing, or otherwise utilizing any literature, business forms, printed matter, signs, or any other representations, regardless of the medium, which bear the Infringing Mark or any confusingly similar variant, and from otherwise unfairly competing in any way with Plaintiff;

(8)     To deliver up to Plaintiff all literature. printed matter, products, and any other representations, regardless of form, which are in, or come to be in, Defendants' respective possession, custody, or control and which bear the Infringing Mark or any confusingly similar variant;

(9)     To notify its direct customers, sponsors, donors, vendors, agents, and representatives that the Infringing Mark or any confusingly similar variant is not connected with Plaintiff.

(10)    To immediately institute full compliance with any order entered by this Court and, within thirty days following the date of entry of any preliminary or permanent injunctive relief issued by this Court, propound and file a statement under oath and penalty of perjury, that each and every injunctive provision has been fully and completely complied with.

(11)    To immediately relinquish control over Plaintiff's Facebook page

and to take every action to place Plaintiff's authorized representative in administrative control over that social media account.

      B.     An accounting and payment of all profits gained by the Defendants while engaging in the acts complained of herein said payment to be trebled for the willful infringement by Defendants;

      C.     All monetary damages suffered by Plaintiff said damages to be trebled for the willful infringement by Defendants;

      D.     An award of attorneys' fees and costs pursuant to 15 U.S.C. §1117; and

      E.     Such other interlocutory and permanent relief as may be just and proper.

## COUNT VI
## Passing Off
### (15 U.S.C. §1125)

132.    Plaintiff repeats and realleges Paragraphs 1 through 4 and 6 through 104 above as if fully set forth herein.

133.    Defendants' acts, as alleged herein constitute passing off in violation of 15 U.S.C. §1125 and related subsections.

134.    Defendants' acts, as alleged herein, have caused irreparable injury and damage to Plaintiff and, unless restrained, will continue to do so.

135.    As a result of Defendants' infringing activities, Plaintiff has suffered damages with interest.

136.    Plaintiff has no adequate complete remedy at law.

WHEREFORE, Plaintiff demands judgment against Defendants including:

      A.     A preliminary and permanent injunction enjoining and restraining

Defendants and their officers, directors, principals, alter egos, agents, servants, employees, successors, assigns, attorneys, and all those persons in active concert or participation therewith who received actual notice of this Court's orders:

(1)     From making use of the trademarked name "SIX GUN TERRITORY" in conjunction with any educational or entertainment service;

(2)     From making use of the SIX GUN logos described in this Complaint; to-wit: the "principal logo", the "gunslinger logo", the "U.S. Marshall logo" and the "six shooter logo";

(3)     From causing likelihood of confusion, or causing mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff or Plaintiff's trademark, or as to the origin, sponsorship, or approval of its products and services, or commercial reputation, or dilution of the distinctiveness of, Plaintiff's trademark or Plaintiff's forms of advertising;

(4)     From directly or indirectly falsely designating or representing that any products or services are authorized, approved, associated with, or originating from Plaintiff;

(5)     From directly or indirectly using the Infringing Mark or any confusingly similar variant, which is likely to cause confusion or further irreparable harm to Plaintiff's business, reputation or goodwill;

(6)     From utilizing the Infringing Mark or any confusingly similar variant in any shape or manner;

(7)     From publishing, assembling, marketing, distributing, or otherwise utilizing any literature, business forms, printed matter, signs, or any other representations,

regardless of the medium, which bear the Infringing Mark or any confusingly similar variant, and from otherwise unfairly competing in any way with Plaintiff;

(8)     To deliver up to Plaintiff all literature. printed matter, products, and any other representations, regardless of form, which are in, or come to be in, Defendants' respective possession, custody, or control and which bear the Infringing Mark or any confusingly similar variant;

(9)     To notify its direct customers, sponsors, donors, vendors, agents, and representatives that the Infringing Mark or any confusingly similar variant is not connected with Plaintiff.

(10)    To immediately institute full compliance with any order entered by this Court and, within thirty days following the date of entry of any preliminary or permanent injunctive relief issued by this Court, propound and file a statement under oath and penalty of perjury, that each and every injunctive provision has been fully and completely complied with.

(11)    To immediately relinquish control over Plaintiff's Facebook page and to take every action to place Plaintiff's authorized representative in administrative control over that social media account.

B.      An accounting and payment of all profits gained by the Defendants while engaging in the acts complained of herein, said payment to be trebled for the willful infringement by Defendants;

C.      All monetary damages suffered by Plaintiff, said damages to be trebled for the willful infringement by Defendants;

D.      An award of attorneys' fees and costs pursuant to 15 U.S.C. §1117; and

E.      Such other interlocutory and permanent relief as may be just and proper.

## COUNT VII

## Florida Statutory Trademark Infringement

137.    Plaintiff repeats and realleges Paragraphs 1 through 103 and 105 above as if fully set forth herein.

138.    This is an action for damages and injunctive relief pursuant to Chapter 495 of the Florida Statutes (the Florida Registration and Protection of Trademarks Act).

138.    Plaintiff has established valuable rights in its trademark, "Six Gun Territory", which is a fanciful identifier of Plaintiff's unique service, utilized in commerce in Florida and elsewhere, and by which Plaintiff and its events have come to be known and associated by the public.

139.    Plaintiff has properly registered its trademark with the Florida Secretary of State and is entitled to enforce that trademark pursuant to the Florida Registration and Protection of Trademarks Act.

140.    Defendants' acts, as set forth herein, constitute trademark infringement in violation of §495.131, Fla.Stat., thereby entitling Plaintiff to all of the remedies afforded by §495.141, Fla.Stat.

141.    Defendants' acts, as alleged herein with respect to Defendants' infringement of Plaintiff's trademark, are likely to cause public confusion, mistake, or deception and constitute trademark infringement in violation of §495.131, Fla.Stat.

142.    Actual customer confusion is shown by the fact that Defendants have redirected Plaintiff's patrons from the SIX GUN Facebook page to the Facebook page established by LEGACY and by the fact that sponsors, donors, vendors who have

previously done business with SIX GUN have been led to believe that Plaintiff is associated with LEGACY's events.

143.   Defendants' acts, as alleged herein, have caused irreparable injury and damage to Plaintiff and, unless restrained, will continue to do so.

144.   As a result of Defendants' infringing activities, Plaintiff has suffered damages with interest.

145.   Plaintiff has no adequate complete remedy at law.

WHEREFORE, Plaintiff demands judgment against Defendants including:

A.   A preliminary and permanent injunction enjoining and restraining Defendants and their officers, directors, principals, alter egos, agents, servants, employees, successors, assigns, attorneys, and all those persons in active concert or participation therewith who received actual notice of this Court's orders:

(1)   From making use of the trademarked name "SIX GUN TERRITORY" in conjunction with any educational or entertainment service;

(2)   From making use of the SIX GUN logos described in this Complaint; to-wit: the "principal logo", the "gunslinger logo", the "U.S. Marshall logo" and the "six shooter logo";

(3)   From causing likelihood of confusion, or causing mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff or Plaintiff's trademark, or as to the origin, sponsorship, or approval of its products and services, or commercial reputation, or dilution of the distinctiveness of, Plaintiff's trademark or Plaintiff's forms of advertising;

(4)   From directly or indirectly falsely designating or representing that

any products or services are authorized, approved, associated with, or originating from Plaintiff;

(5)   From directly or indirectly using the Infringing Mark or any confusingly similar variant, which is likely to cause confusion or further irreparable harm to Plaintiff's business, reputation or goodwill;

(6)   From utilizing the Infringing Mark or any confusingly similar variant in any shape or manner;

(7)   From publishing, assembling, marketing, distributing, or otherwise utilizing any literature, business forms, printed matter, signs, or any other representations, regardless of the medium, which bear the Infringing Mark or any confusingly similar variant, and from otherwise unfairly competing in any way with Plaintiff;

(8)   To deliver up to Plaintiff all literature. printed matter, products, and any other representations, regardless of form, which are in, or come to be in, Defendants' respective possession, custody, or control and which bear the Infringing Mark or any confusingly similar variant;

(9)   To notify its direct customers, sponsors, donors, vendors, agents, and representatives that the Infringing Mark or any confusingly similar variant is not connected with Plaintiff.

(10)   To immediately institute full compliance with any order entered by this Court and, within thirty days following the date of entry of any preliminary or permanent injunctive relief issued by this Court, propound and file a statement under oath and penalty of perjury, that each and every injunctive provision has been fully and completely complied with.

(11)    To immediately relinquish control over Plaintiff's Facebook page and to take every action to place Plaintiff's authorized representative in administrative control over that social media account.

B.    An accounting and payment of all profits gained by the Defendants while engaging in the acts complained of herein;

C.    All monetary damages suffered by Plaintiff; and

D.    Such other interlocutory and permanent relief as may be just and proper.

<u>**COUNT VIII**</u>

**<u>Florida Common Law Trademark Infringement</u>**

146.    Plaintiff repeats and realleges Paragraphs 1 through 103 and 105 above as if fully set forth herein.

147.    This is an action for damages and injunctive relief pursuant to the common law of Florida.

148.    Plaintiff has established valuable rights in its trademark, "Six Gun Territory", which is a fanciful identifier of Plaintiff's unique product and services, utilized in commerce in Florida and elsewhere, and by which Plaintiff's events have come to be known and associated by the public.

149.    Defendants' acts, as set forth herein, constitute trademark infringement in violation of the Florida common law.

150.    Defendants' acts, as alleged herein, have caused irreparable injury to Plaintiff, and, unless restrained, will continue to do so.

151.    As a result of Defendants' infringing activities, Plaintiff has suffered damages with interest.

152.    Plaintiff has no adequate, complete remedy at law.

WHEREFORE, Plaintiff demands judgment against Defendants, including:

A.    A preliminary and permanent injunction enjoining and restraining Defendants and their officers, directors, principals, alter egos, agents, servants, employees, successors, assigns, attorneys, and all those persons in active concert or participation therewith who received actual notice of this Court's orders:

(1)    From making use of the trademarked name "SIX GUN TERRITORY" in conjunction with any educational or entertainment service;

(2)    From making use of the SIX GUN logos described in this Complaint; to-wit: the "principal logo", the "gunslinger logo", the "U.S. Marshall logo" and the "six shooter logo";

(3)    From causing likelihood of confusion, or causing mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff or Plaintiff's trademark, or as to the origin, sponsorship, or approval of its products and services, or commercial reputation, or dilution of the distinctiveness of, Plaintiff's trademark or Plaintiff's forms of advertising;

(4)    From directly or indirectly falsely designating or representing that any products or services are authorized, approved, associated with, or originating from Plaintiff;

(5)    From directly or indirectly using the Infringing Mark or any confusingly similar variant, which is likely to cause confusion or further irreparable harm to Plaintiff's business, reputation or goodwill;

(6)    From utilizing the Infringing Mark or any confusingly similar

variant in any shape or manner;

(7)     From publishing, assembling, marketing, distributing, or otherwise utilizing any literature, business forms, printed matter, signs, or any other representations, regardless of the medium, which bear the Infringing Mark or any confusingly similar variant, and from otherwise unfairly competing in any way with Plaintiff;

(8)     To deliver up to Plaintiff all literature. printed matter, products, and any other representations, regardless of form, which are in, or come to be in, Defendants' respective possession, custody, or control and which bear the Infringing Mark or any confusingly similar variant;

(9)     To notify its direct customers, sponsors, donors, vendors, agents, and representatives that the Infringing Mark or any confusingly similar variant is not connected with Plaintiff.

(10)     To immediately institute full compliance with any order entered by this Court and, within thirty days following the date of entry of any preliminary or permanent injunctive relief issued by this Court, propound and file a statement under oath and penalty of perjury, that each and every injunctive provision has been fully and completely complied with.

(11)     To immediately relinquish control over Plaintiff's Facebook page and to take every action to place Plaintiff's authorized representative in administrative control over that social media account.

B.     An accounting and payment of all profits gained by the Defendants while engaging in the acts complained of herein;

C.     All monetary damages suffered by Plaintiff; and

D.     Such other interlocutory and permanent relief as may be just and proper.

## COUNT IX
### Florida Deceptive and Unfair Trade Practices
### (Florida Statutes § 501.204, et seq.)

153.    Plaintiff repeats and realleges Paragraphs 1 through 103 above as if fully set forth herein.

154.    Defendants' deceptive, unfair and commercially exploitive acts, as alleged herein, were in bad faith and are in violation of the Florida Deceptive and Unfair Trade Practices Act, in violation of Florida Statutes §501.204, *et seq.*

155.    Defendants' deceptive and unfair trade practices are directly tied to consumer transactions and harm the consuming public in the following respects:

A.     Consumers are likely to be confused by Defendants' similar events, products and services which are marketed in violation of Plaintiff's registered trademark and utilize an intentionally similar name.

B.     Defendants have intentionally copied Plaintiffs' logos and trade dress for the specific purpose of confusing the consuming public as to the identity of the producer of those events, products and services.

C.     Due to their confusion, consumers are likely to be misled into purchasing Defendants' products and services.

D.     Defendants have used their control over Plaintiff's social media accounts and the similarity in their names to confuse patrons, sponsors, donors, vendors who are seeking out the Plaintiff but are instead steered to the Defendants.

E.     Defendants have benefitted from Plaintiffs ingenuity and investment of time

and money over the years to develop strong brand loyalty associated with the SIX GUNS trademark, logos and trade dress. Essentially, Defendant has stolen Plaintiff's identity for the purpose of competing unfairly with Plaintiff's patrons, sponsors, donors and vendors.

156.    Defendants' acts, as alleged herein, have caused irreparable injury to Plaintiff, and, unless restrained, will continue to do so.

157.    As a result of Defendants' deceptive and unfair trade practices, Plaintiff has suffered damages with interest.

158.    Plaintiff has retained BENJAMIN, AARONSON, EDINGER & PATANZO, P.A. as its attorneys to represent it in this action and has agreed to pay them a reasonable fee, which fee Defendants must pay pursuant to §501.2105, Fla.Stat.

159.    Plaintiff has no adequate, complete remedy at law.

WHEREFORE, Plaintiff demands judgment against Defendants, including:

A.    A preliminary and permanent injunction enjoining and restraining Defendants and its officers, directors, principals, alter egos, agents, servants, employees, successors, assigns, attorneys, and all those persons in active concert or participation therewith who received actual notice of this Court's orders:

(1)    From making use of the trademarked name "SIX GUN TERRITORY" in conjunction with any educational or entertainment service;

(2)    From making use of the SIX GUN logos described in this Complaint; to-wit: the "principal logo", the "gunslinger logo", the "U.S. Marshall logo" and the "six shooter logo";

(3)    From causing likelihood of confusion, or causing mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff or

Plaintiff's trademark, or as to the origin, sponsorship, or approval of its products, or commercial reputation, or dilution of the distinctiveness of Plaintiff's trademark or Plaintiff's forms of advertising;

(4)     From directly or indirectly falsely designating or representing that any products or services are authorized, approved, associated with, or originating from Plaintiff;

(5)     From directly or indirectly using the Infringing Mark or any confusingly similar variant, which is likely to cause confusion or further irreparable harm to Plaintiff's business, reputation or goodwill;

(6)     From utilizing the Infringing Mark or any confusingly similar variant in any shape or manner;

(7)     From publishing, assembling, marketing, distributing, or otherwise utilizing any literature, business forms, printed matter, signs, or any other representations, regardless of the medium, which bear the Infringing Mark or any confusingly similar variant, and from otherwise unfairly competing in any way with Plaintiff;

(8)     To deliver up to Plaintiff all literature, printed matter, products, and any other representations, regardless of form, which are in, or come to be in, Defendants' respective possession, custody, or control and which bear the Infringing Mark or any confusingly similar variant;

(9)     To notify its direct customers, agents, and representatives that the Infringing Mark or any confusingly similar variant is not connected with Plaintiff;

(10)     To immediately institute full compliance with any order entered by this Court and, within thirty days following the date of entry of any preliminary or

permanent injunctive relief issued by this Court, propound and file a statement, under oath and penalty of perjury, that each and every injunctive provision has been fully and completely complied with.

(11)   To immediately relinquish control over Plaintiff's Facebook page and to take every action to place Plaintiff's authorized representative in administrative control over that social media account.

B.   An accounting and payment of all profits gained by the Defendants while engaging in the acts complained of herein;

C.   All monetary damages suffered by Plaintiff;

D.   An award of punitive and exemplary damages;

E.   An award of attorney's fees and costs; and

F.   Such other interlocutory and permanent relief as may be just and proper.

## COUNT X
## Breach of Fiduciary Duty

160.   Plaintiff repeats and realleges Paragraphs 1 through 103 above as if fully set forth herein.

161.   This is an action for damages for breach of fiduciary duty under the common law of Florida.

162.   In his capacity as Vice President of SIX GUN, PIERCE was privy to a wide variety of trade secrets and proprietary information belonging to Plaintiff, including but not limited to supplier and vendor information, pricing details including profit margins, the company's balance sheet and other financial information, and data concerning Plaintiff's website marketing campaign and associated intellectual property.

163.    In his capacity as Vice President of SIX GUN, PIERCE had a duty to preserve and safeguard Plaintiff's tangible personal property.

164.    In his capacity as Vice President of SIX GUN, PIERCE had a duty to refrain from utilizing the Plaintiff's intellectual property and tangible personal property for his own use.

165.    PIERCE owed a fiduciary duty of good faith and fair dealing to the Plaintiff on account of his position with the organization and because he was entrusted with confidential and proprietary information,

166.    PIERCE breached his fiduciary duties in the following ways:

A.    PIERCE directly competed with Plaintiff utilizing deceptive and unfair trade practices as described above. In particular, PIERCE directly solicited Plaintiff's patrons, sponsors, donors and vendors to attend events promoted by LEGACY in a manner intended to confuse those third parties into believing that they were dealing with SIX GUN.

B.    PIERCE seized control over SIX GUN's Facebook page and changed the administration of that site so that Plaintiff's agents can no longer access or control that site. PIERCE has converted the content of Plaintiff's Facebook page (consisting of pictures, video and text) for his own purposes and that of LEGACY.

C.    PIERCE has falsely represented to the Florida Secretary of State that he has an individual ownership interest in SIX GUN's trademark and that he has the right to control that trademark registration to the exclusion of the Plaintiff.

D.    PIERCE falsely represented to the Florida Secretary of State, and to the general public, including Plaintiff's sponsors, donors and vendors, that he has the right and authority to direct SIX GUN's business and operations to the exclusion of the authorized

President and Board of Directors. Those misrepresentations have caused issues with the State of Florida and have led to widespread confusion among Plaintiff's patrons, sponsors, donors and vendors.

      E.     PIERCE has continued to make use of SIX GUN's name, trademark, logos, trade dress and intellectual property in an effort to redirect patrons, sponsors, donors, vendors to LEGACY, a competing organization which he controls.

      F.     PIERCE has taken possession of and converted to his own use all of the items listed in Exhibit "E" attached to this Complaint.

      167.    Plaintiff has been damaged as a result of PIERCE's actions and those breaches of fiduciary duty described above.

      168.    PIERCE's actions and breaches of fiduciary duty are the proximate cause of Plaintiff's damages.

      WHEREFORE, Plaintiff demands judgment for damages against JIM PIERCE for breach of fiduciary duty, together with costs, interest and such further relief as this Court deems just.

## COUNT XI
### Replevin

      169.    Plaintiff repeats and realleges Paragraphs 1 through 102  above as if fully set forth herein.

      170.    This is an action for replevin pursuant to Chapter 78, Fla.Stat. for personal property, the value of which is approximately $2,315.00 exclusive of costs, interest and attorney's fees.

      171.    Plaintiff seeks to recover possession of personal property located in Marion

County, Florida, the value of which, to the Plaintiff's best knowledge, information, and belief, is approximately $2,315.00.

172.    Plaintiff is lawfully entitled to possession of those items of personal property listed on Exhibit "E" attached to this Complaint.

173.    PIERCE has possession of Plaintiff's personal property identified in the preceding paragraph because he was allowed access to them when he held the position of Vice-President.

174.    PIERCE is no longer the Vice-President of SIX GUN and is not authorized or entitled to possess or retain those items of personal property.

175.    When he parted ways with Plaintiff, PIERCE took with him some of the items of personal property listed in Exhibit "E". With respect to other items, PIERCE directed agents of SIX GUN to deliver that personal property to him, falsely claiming that he had the authority and right to possess that personal property for his own use.

176.    On information and belief, Plaintiff alleges that PIERCE transferred all or most of the seized personal property to LEGACY to assist that Defendant in its efforts to compete unfairly with the Plaintiff.

177.    Plaintiff has demanded that PIERCE and LEGACY surrender the said items of personal property, but the Defendants have failed and refused to surrender that personal property.

178.    To Plaintiff's best knowledge, information and belief, Defendants have no basis for detaining the said personal property.

179.    The claimed personal property has not been taken for any tax, assessment or fine pursuant to law.

180.    The above-described personal property has not been taken under an execution or attachment against the property of the Plaintiff.

WHEREFORE, Plaintiff demands:

A.    An Order directed to Defendants to show cause why the claimed property should not be taken from the possession of the Defendants and delivered to the Plaintiff;

B.    Judgment for the personal property against Defendants and in favor of Plaintiff;

C    Judgment against Defendants for damages for the detention of Plaintiff's property,

D.    An award of Plaintiff's costs and such other relief this Court deems just.

## COUNT XII
### Conversion

181.    Plaintiff repeats and realleges Paragraphs 1 through 102  above as if fully set forth herein.

182.    This is an action for damages for conversion of personalty, the value of which does not exceed $50,000.00.

183.    Plaintiff is the owner of those items of personal property listed on Exhibit "E" attached to this Complaint.

184.    In late 2023 and early 2024 PIERCE converted to his own use those items of Plaintiff's personal property listed in Exhibit "E", that was then the property of the Plaintiff, of a value of $2,315.00

185.    On information and belief, Plaintiff alleges that PIERCE transferred all or most of the seized personal property to LEGACY to assist that Defendant in its efforts to

compete unfairly with the Plaintiff.

186.    Defendants failed to return the said personal property despite demand therefor.

WHEREFORE, Plaintiff demands judgment for damages against Defendants, together with the costs of this action and such other relief as this Court may deem just.

**JURY TRIAL DEMANDED**

Plaintiff SIX GUN TERRITORY, INC. requests a jury trial on all issues so triable as a matter of right.

BENJAMIN, AARONSON, EDINGER & PATANZO, P.A.


  /s/  Gary S. Edinger
GARY S. EDINGER, Esquire
Florida Bar No. 0606812
305 N.E. 1st Street
Gainesville, Florida 32601
(352) 338-4440  (Fax) (352) 337-0696
GSEdinger12@gmail.com

*Attorneys for Plaintiff*